UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OHI ASSET (CT) LENDER, LLC,          :
            Plaintiff,               :
                                     :
        v.                           :      CA 09-219 ML
                                     :
WOODLAND MANOR IMPROVEMENT           :
ASSOCIATION by and through           :
ALLAN M. SHINE, in his               :
capacity as Court-appointed          :
Trustee,                             :
            Defendant.               :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

    Before the Court is Defendant's Motion to Dismiss or in the
Alternative to Stay on Grounds of Abstention (Doc. #9) ("Motion
to Dismiss or Stay" or "Motion").  The Motion has been referred
to me for preliminary review, findings, and recommended
disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  For the
reasons stated below, I recommend that the Motion be denied.

**Overview**

    This is an action for declaratory judgment.  See Complaint
(Doc. #1) ¶¶ 18-21.  Plaintiff OHI Asset (CT) Lender, LLC
("Plaintiff" or "OHI"), asks that the Court declare the
respective rights and obligations of OHI and Defendant Woodland
Manor Improvement Association ("Defendant" or "WMIA") under three
agreements relating to a private sewer system operated by WMIA
that services property owned by OHI in Coventry, Rhode Island.

<u>See</u> <u>id.</u>

WMIA contends that although OHI has the right, as a successor property owner, to use the private sewer system, OHI must execute a sewer use agreement with WMIA and pay WMIA a "one-time" fee for continued use in an amount to be determined by the Trustee. <u>See</u> Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or, in the Alternative, to Stay on Grounds of Abstention ("Plaintiff's Mem.") at 6-7; <u>id.</u>, Exhibit ("Ex.") 1 at 2 (Letter from Maggiacomo to Sheridan of 7/14/09). OHI seeks a judgment declaring that as a transferee or successor in title, it is not required to pay a fee for the continued use of the system (as distinguished from a connection fee or fee for water consumption). <u>See</u> Plaintiff's Mem. at 7.

By the instant Motion, WMIA seeks dismissal or a stay of OHI's Complaint on grounds of abstention. <u>See</u> Motion at 1. WMIA contends that the issues in dispute can be more appropriately addressed by the state superior court which has assumed custody and control of the sewer system through its appointed trustee and is the forum in which WMIA's ongoing trusteeship proceeding is pending. <u>See</u> Memorandum of Law in Support of Defendant's Motion to Dismiss or in the Alternative to Stay on Grounds of Abstention ("Defendant's Mem.") at 1; <u>see also</u> Reply Memorandum of Law in Support of Defendant's Motion to Dismiss, or in the Alternative to Stay, on Grounds of Abstention ("Reply Mem.") at 2.

2

**Facts**[1]

In the late 1970s, a group of developers in Coventry, Rhode Island, sought to obtain sewer disposal service for a number of parcels of real estate (the "Coventry Properties") which were then under development.  See Defendant's Mem. at 2; Complaint ¶ 6.  On May 30, 1978, acting through an entity called the Mapleroot Development Corporation ("Mapleroot"), the developers entered into a sewage disposal agreement (the "1978 Agreement") with the Town of West Warwick (the "Town") pursuant to which the Town agreed to provide sewage treatment for effluent from the Coventry Properties.  See Joint Statement of Facts (Doc. #17) ("JSF") ¶ 1; Complaint ¶¶ 6-7.  The effluent would be delivered to the Town's sewage treatment plant via a private sewage system, consisting of a sewage pumping system and sewer line (collectively the "Sewer Line").  See JSF ¶ 1.

WMIA was formed to manage and operate the Sewer Line for the benefit of five of the Coventry Properties that were eligible to be connected to the Sewer Line.  See Defendant's Mem. at 2.  On January 28, 1981, Mapleroot, WMIA, Woodland Manor I Associates, Woodland Manor II Associates, and Boston Neck Realty Company

---

[1] The facts in this matter span more than thirty years and involve multiple and successor entities.  In an effort to simplify matters, the Court requested that the parties submit a joint statement of facts.  See Joint Statement of Facts (Doc. #17) ("JSF").  The Court relies largely on the JSF and dispenses with a more detailed exposition of the prior history which has resulted in the present state of matters.

entered into a Declaration of Rights and Covenants regarding the construction of the Sewer Line (the "Declaration of Rights"). JSF ¶ 2.

As of September 10, 2003, Haven Health Center of Coventry, LLC. was the owner of a 300-bed nursing home (the "Coventry Health Center") that was serviced by the Sewer Line.  Id. ¶ 3. On September 10, 2003, Coventry Sewage Associates, WMIA, Haven Eldercare of New England, LLC, and Haven Health Center of Coventry, LLC, entered into a sewer use agreement (the "2003 Sewer Use Agreement").  Id. ¶ 4.  Following execution of the 2003 Sewer Use Agreement, Haven Eldercare of New England, LLC, or Haven Health Center of Coventry, LLC (or one of their affiliated entities), (a) made payments on account of the one-time continuation fee set out in the 2003 Sewer Use Agreement and (b) commenced paying the annual service fee pursuant to monthly invoices.  Id. ¶ 5.

As of January 24, 2006, WMIA had acquired ownership of the Sewer Line from Coventry Sewage Associates.[2]  Id. ¶ 6.  By order dated February 10, 2006, Allan M. Shine, Esq., was appointed Permanent Trustee of WMIA (the "Trustee") with all the powers of a state court receiver pursuant to the Order Appointing Trustee

---

[2] As of the time the 2003 Sewer Use Agreement was executed, WMIA owned the land on which a sewer pumping station component (e.g., a sewer line and pumping station) was located and Coventry Sewer Associates owned the sewer line and pumping station.  Complaint ¶ 8.

(the "WMIA Trusteeship Action").  Id. ¶ 7.  The WMIA Trusteeship
Action was filed in the Kent County Superior Court to satisfy
requirements of the United States Department of Housing and Urban
Development ("HUD") for issuing insurance for financing the sale
of Woodland Manor I and Woodland Manor II, apartment complexes
serviced by the Sewer Line.[3]  Id.

---

[3] As the reason for the creation of the trusteeship is atypical,
the parties' explanations for that action are reproduced below. OHI
states that the:

> [a]ppointment of the Trustee was requested only because
> Springfield Armoury Limited Partnership applied to [HUD] to
> obtain the financing to effectuate the purchase or certain
> apartment complexes located on two of the original parcels of
> land serviced by the sewer system.  The then existing HUD
> guidelines purportedly required that a private sewer system be
> owned and operated by an independent trustee.

Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss
or, in the Alternative, to Stay on Grounds of Abstention ("Plaintiff's
Mem.") at 1 n.1.  WMIA's explanation is similar but more detailed:

> Around [early 2006], Springfield Armoury Limited
> Partnership ("Springfield"), on the one hand, and Evergreen
> [Managing Estates Corporation, the then owner of the Sewer
> Line] and Woodland Manor II Associates ("Woodland II") (an
> affiliate of Evergreen), on the other, entered into a purchase
> and sale agreement for apartment complexes located on two of
> the original parcels of land serviced by the Sewer Line (the
> "Woodland Apartments").  In connection therewith, Springfield
> applied to [HUD] to obtain the financing to effect the
> purchase.  HUD suggested that the Sewer Line, in order to meet
> the then existing HUD guidelines for a private sewer system,
> be owned and operated by an independent trustee.
>
> Evergreen and Woodland II, as members of WMIA, advised
> WMIA's Board of Directors of HUD's suggestion.  Mindful that
> the Woodland Apartments[']] continued use of the Sewer Line
> substantially impacted its economic stability, WMIA's Board of
> Directors voted to seek the appointment of a trustee with all
> the powers of a state court receiver, and Evergreen agreed to
> convey all its interest in the Sewer Line to the Trustee in
> consideration of a purchase money note ... and mortgage.
> Accordingly, in January 2006, a Petition was filed in the

On or about November 20, 2007, Haven Eldercare of New England, LLC, Haven Health Center of Coventry, LLC, Coventry Equities, LLC (an affiliated entity of Haven Eldercare of New England, LLC and/or Haven Health Center of Coventry, LLC), and certain of their affiliated entities filed Petitions for Relief under Title 11 of the United States Code (the "Bankruptcy Case") in the United States Bankruptcy Court for the District of Connecticut (the "Bankruptcy Court").  See id. ¶ 8.  On or about July 4, 2008, the Bankruptcy Court entered that certain Order (A) Authorizing Sale of Certain Debtors' Assets to OHI Asset (CT) Lender, LLC and OHI (Connecticut), Inc. Free and Clear of Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363; (B) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases of Non-Residential Real Property and Fixing Cure Amounts; and (C) Granting Related Relief (the "Order").  The Order approved, inter alia, OHI's acquisition of Coventry Health Center subject to an Asset Purchase and Operations Transfer Agreement dated July 7, 2008.  See id. ¶ 9. None of the debtors in the Bankruptcy Case assumed the 2003 Sewer

---

Rhode Island Superior Court seeking the appointment of a Trustee to own and operate the Sewer Line in order to protect the interests of the WMIA as well as the users of the Sewer Line.

Memorandum of Law in Support of Defendant's Motion to Dismiss or in the Alternative to Stay on Grounds of Abstention ("Defendant's Mem.") at 3 (citation omitted).

Use Agreement during the course of the Bankruptcy Case, and therefore the 2003 Sewer Use Agreement was not assigned to OHI. See id. ¶ 10.

As of the date that the instant action was initiated, OHI was not a party to the WMIA Trusteeship Action. See id. ¶ 11. From the time that OHI acquired Coventry Health Center, OHI (or its lessee) has been using the Sewer Line and has been paying the Trustee for such use. See id.

### Travel

Plaintiff filed its Complaint in this Court on May 11, 2009. See Docket. On July 23, 2009, Defendant filed the instant Motion to which Plaintiff filed a response on August 17, 2009. See id. A hearing was held on September 10, 2009. See id. On September 25, 2009, the parties filed the JSF which the Court had requested at the hearing. See id. Thereafter, the Court took the matter under advisement.

### Abstention

Abstention from the exercise of federal jurisdiction is the exception, not the rule. The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.

Colorado River Water Conservation Dist. v. United States, 424

7

U.S. 800, 813, 96 S.Ct. 1236 (1976)(internal quotation marks omitted).

There are also certain very limited circumstances outside the abstention context in which a federal court may dismiss an action in deference to a concurrent state suit.  Arizona v. San Carlos Apache Tribe of Arizona, 463 U.S. 545, 551-52, 103 S.Ct. 3201 (1983)(explaining that dismissal in Colorado River could not be supported under the doctrine of abstention in any of its forms, but that it was justified as an application of traditional principles of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation")(quoting Colorado River, 424 U.S. at 817) (alteration in original).  Among the circumstances which may counsel against concurrent federal proceedings are "the comprehensive nature of the state proceedings and the considerable expertise and technical resources available in those proceedings."  Id. at 552 (citing Colorado River, 424 U.S. at 819-20).

## Discussion

## I.  Colorado River Abstention

WMIA argues that abstention is appropriate in this case pursuant to the abstention doctrine articulated in Colorado River.  See Defendant's Mem. at 6-12.  In order for a court to abstain under the Colorado River doctrine, there must be parallel

proceedings in the state and federal courts such that substantially the same parties are litigating substantially the same issues in the state and federal forums.  United States v. Fairway Capital Corp., 433 F.Supp.2d 226, 238 (D.R.I. 2006); see also Rossi v. Gemma, 489 F.3d 26, 39 n.22 (1st Cir. 2007)(noting "that suits can trigger Colorado River abstention when they involve substantially the same parties")(internal quotation marks omitted); Tyrer v. City of S. Beloit, Illinois, 456 F.3d 744, 752 (7th Cir. 2006)("Generally, a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.")(internal quotation marks omitted).

The determination that there are parallel proceedings is a threshold inquiry.  IFC Interconsult, AG v. Safeguard Int'l Partners, 438 F.3d 298, 306 (3rd Cir. 2006)("The threshold requirement for a district court to even entertain abstention is a contemporaneous parallel judicial proceeding."); Scottsdale Ins. Co. v. Detco Indus., Inc., 426 F.3d 994, 996 (8th Cir. 2005)("A threshold issue in this case is whether parallel proceedings were pending in the state court at the time [plaintiff] brought its declaratory judgment action."); Gannett Co. v. Clark Constr. Grp., Inc., 286 F.3d 737, 741 (4th Cir. 2002)("For a federal court to abstain under the Colorado River doctrine, two conditions must be satisfied.  As a threshold requirement, there

9

must be parallel proceedings in state and federal court.  Second,
exceptional circumstances warranting abstention must
exist.")(internal citations and quotation marks omitted); <u>see
also</u> <u>Tyrer</u>, 456 F.3d at 751 ("To determine whether a stay is
appropriate under the <u>Colorado River</u> doctrine, the district court
must undertake a two-part inquiry.  First, the Court must
determine whether the concurrent state and federal actions are
actually parallel.  Then, once it is established that the suits
are parallel, the court must consider a number of non-exclusive
factors that might demonstrate the existence of exceptional
circumstances.")(internal quotation marks omitted); <u>Villa Marina
Yacht Sales, Inc. v. Hatteras Yachts</u>, 947 F.2d 529, 533 (1st Cir.
1991)(noting that "the federal and Commonwealth actions are
sufficiently parallel to **trigger** the <u>Colorado River</u> doctrine")
(bold added).

   If the proceedings are not parallel, the <u>Colorado River</u>
doctrine does not apply.  See <u>Brown v. Pac. Life Ins. Co.</u>, 462
F.3d 384, 395 n.7 (5th Cir. 2006)("This doctrine only applies
when there are parallel proceedings pending in federal and state
court."); <u>Stewart v. W. Heritage Ins. Co.</u>, 438 F.3d 488, 491 n.3
(5th Cir. 2006); <u>see also</u> <u>R.R. Street & Co. v. Vulcan Materials
Co.</u>, 569 F.3d 711, 714 (7th Cir. 2009)(noting that prerequisite
for <u>Colorado River</u> abstention is "whether two proceedings are
parallel")(citing <u>AAR Int'l, Inc. v. Nimelias Enters. S.A.</u>, 250

F.3d 510, 518 (7th Cir. 2001)); Fairway, 433 F.Supp.2d at 238
(finding action in territorial court "sufficiently parallel to
warrant consideration of the Colorado River doctrine").

Here it is undisputed that at the time this federal court
action was initiated, OHI was not a party to the WMIA Trusteeship
Action in the state superior court.   JSF ¶ 11; see also Reply
Mem. at 3 (admitting that OHI is not a party to the WMIA
Trusteeship Action).   WMIA argues that "[t]he issue is not
whether WMIA has already asserted a claim against OHI with
respect to the Continued Use Fee in the Superior Court, or
whether OHI has been made a party to the WMIA trusteeship."
Reply Mem. at 2.   However, without the existence of parallel
proceedings at the time this action was filed, the first
prerequisite for application of the doctrine is lacking.   Fru-Con
Constr. Corp. v. Controlled Air, Inc., 574 F.3d 527, 537 (8th
Cir. 2009)(plurality opinion)("threshold issue ... is whether
parallel proceedings were pending in state court at the time [the
federal plaintiff] brought its [federal] action")(alterations in
original), reh'g and reh'g en banc denied; Scottsdale Ins. Co.,
426 F.3d at 996; Aetna Cas. & Sur. Co. v. Merritt, 974 F.2d 1196,
1199-1200 (9th Cir. 1992)(rejecting argument that district court
abused its discretion in entertaining plaintiff's declaratory
judgment action when "there was no state action pending when
[plaintiff] filed its declaratory relief action"); Albany Ins.

11

Co. v. Jones, No. A95-330 CV (JWS), 1996 WL 938330, at *2 (D. Alaska June 13, 1996)(denying motion to dismiss or stay where there was no related or parallel action in state court "[w]hen this action was filed"); see also Cont'l Cas. Co. v. Advance Terrazzo & Tile Co., 462 F.3d 1002, 1006 (8th Cir. 2006) (reviewing de novo "whether parallel proceedings were pending in state court at the time [plaintiffs] brought the declaratory judgment action");[4] cf. Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 32 (1st Cir. 2004)(noting that "the time at which the Younger test is applied" is the filing of the federal complaint); Bettencourt v. Bd. of Registration in Medicine of Comm. of Mass., 904 F.2d 772, 777 (1st Cir. 1990)("In determining whether federal proceedings would interfere with ongoing state proceedings, the proper point of reference is the date plaintiff filed his federal complaint."). But see Fru-Con Constr. Corp., 574 F.3d at 544 (Shepherd, J., dissenting)(arguing that "the principles

---

[4] Because the determination of whether there are parallel proceedings is made as of the time the federal action is filed, the fact that here WMIA subsequently filed a motion to show cause in the WMIA Trusteeship Action directed against OHI, see Reply Mem. at 2 n.1 (noting recent filing of motion to show cause in the WMIA Trusteeship Action), does not alter this Court's determination as to the inapplicability of the Colorado River doctrine. See IFC Interconsult, AG v. Safeguard Int'l Partners, 438 F.3d 298, 306 (3rd Cir. 2006) (affirming district court's refusal to abstain under Colorado River where defendant filed application in state court only after plaintiff moved for confirmation of arbitration award in federal court); see also Albany Ins. Co. v. Jones, No. A95-330 CV (JWS), 1996 WL 938330, at *2 (D. Alaska June 13, 1996)(denying motion to dismiss or stay declaratory judgment action where defendant filed state action only after federal action had commenced).

underlying <u>Colorado River</u> abstention ... counsel against an 'originally filed' approach to determine whether state and federal actions are parallel").

Accordingly, because WMIA cannot satisfy the threshold inquiry of the existence of parallel proceedings, the <u>Colorado River</u> doctrine is inapplicable to this case.[5]  Therefore, WMIA's request for abstention on this ground should be rejected.  I so recommend.

## II. <u>Wilton/Brillhart</u> Abstention

WMIA next argues that the Court should decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act.  <u>See</u> Defendant's Mem. at 12-14.

### A. Law

"Under what is known as the <u>Wilton/Brillhart</u> abstention doctrine, district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." <u>R.R. Street & Co. v. Vulcan Materials Co.</u>, 569 F.3d 711, 713 (7th Cir. 2009); <u>see also</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282, 115

---

[5] Because WMIA cannot satisfy this threshold requirement, it is unnecessary for the Court to consider whether the second requirement for <u>Colorado River</u> abstention, i.e., the presence of exceptional circumstances, is also present.  <u>See</u> <u>Tyrer v. City of South Beloit, Illinois</u>, 456 F.3d 744, 751 (7th Cir. 2006)(explaining that "district court must undertake a two-part inquiry"); <u>Gannett Co. v. Clark Constr. Group, Inc.</u>, 286 F.3d 737, 741 (4th Cir. 2002)(stating "[a]s a threshold requirement, there must be parallel proceedings").

S.Ct. 2137 (1995)("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."); Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495, 62 S.Ct. 1173 (1942)("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.  Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.").

Although the First Circuit and this Court have not previously utilized the term Wilton/Brillhart abstention when referring to the authority of district courts to abstain on this basis, both courts have clearly recognized this discretionary power.  See Rossi v. Gemma, 489 F.3d 26, 39 (1st Cir. 2007) (holding that it was within the district court's discretion to dismiss the claim for declaratory relief)(citing Brillhart); Fuller Co. v. Ramon I. Gil, Inc., 782 F.2d 306, 310 (1st Cir. 1986)(discussing Brillhart); Standard Fire Ins. Co. v. Gordon, 376 F.Supp.2d 218, 223-24 (D.R.I. 2005)(citing Wilton, Brillhart, and Fuller); Comtec Info. Sys., Inc. v. Monarch Mktg Sys., Inc., 962 F.Supp. 15, 17 (D.R.I. 1997)("A federal court has discretion

14

to decline to exercise jurisdiction over a declaratory judgement action.")(citing Wilton); see also DeNovellis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997)("The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant;' courts have broad discretion to decline to enter a declaratory judgment.")(quoting Wilton, 515 U.S. at 287); El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992)("[D]eclaratory relief, both by its very nature and under the plain language of 28 U.S.C. § 2201,[6] is discretionary.").

The Colorado River doctrine's requirement of "exceptional circumstances" does not apply to decisions regarding the entertainment of declaratory judgment actions.  R.R. Street & Co., 569 F.3d at 714-15 ("In Wilton, the Court ... reject[ed] the

---

[6] 28 U.S.C. § 2201 provides in relevant part:

(a) **In a case of actual controversy within its jurisdiction,** except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or counter-vailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, **any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration,** whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a) (bold added).

argument that exceptional circumstances under the <u>Colorado River</u>
doctrine must exist in order to justify abstention in a
declaratory judgment action.")(footnote omitted); <u>Standard Fire</u>
<u>Ins. Co. v. Gordon</u>, 376 F.Supp.2d at 223; <u>see also</u> <u>Wilton</u>, 515
U.S. at 286 ("Distinct features of the Declaratory Judgment Act
... justify a standard vesting district courts with greater
discretion in declaratory judgment actions than that permitted
under the 'exceptional circumstances' test of <u>Colorado River</u> and
<u>Moses H. Cone [Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1,
103 S.Ct. 927 (1983)]."). Rather, "a more forgiving,
discretionary standard governs a district court's decision to
stay or dismiss a declaratory action, consistent with the
Declaratory Judgment Act." <u>Standard Fire Ins. Co.</u>, 376 F.Supp.2d
at 223 (citing <u>Wilton</u>, 515 U.S. at 286)(footnote omitted).

The question for a district court presented with a suit
under the Declaratory Judgment Act is "whether the questions in
controversy between the parties to the federal suit, and which
are not foreclosed under the applicable substantive law, can be
better settled in the proceeding pending in the state court."
<u>Id.</u> at 224 (quoting <u>Wilton</u>, 515 U.S. at 282 (citing <u>Brillhart</u>)).
"While the Supreme Court has declined to set forth an exclusive
list of factors governing the proper exercise of this discretion,
the Court has noted that district courts should look for guidance
to the scope of the pending state court proceeding, the available

16

state court defenses, and whether the claims of all parties in interest can be settled in the state court proceeding." Id. (citing Wilton, 515 U.S. at 283). Specifically, where parallel proceedings presenting an opportunity for ventilation of the same state law issues are underway in state court, these considerations clearly support a district court's decision to stay or dismiss a declaratory judgment action. Id. (citing Wilton, 515 U.S. at 290). "In addition to these considerations, the Wilton Court noted that '[o]ther cases ... might shed light on additional factors governing a district court's decision to stay or to dismiss a declaratory judgment action ....'" Id. at 225 (quoting Wilton, 515 U.S. at 283)(alterations in original).

###   B.  Applicability of Wilton/Brillhart

The Wilton/Brillhart factors described above provide the framework for considering the present Motion. Standard Fire Ins. Co., 376 F.Supp.2d at 225. However, they are not to be used as a mechanical checklist, but rather must be carefully balanced as they apply in a given case. Id. (citing Petricca v. FDIC, 349 F.Supp.2d 64, 67 (D. Mass. 2004)("A court in deciding whether to exercise its broad discretion to dismiss an action pending the outcome of a parallel state action should compare the nexus between the two suits, considering the totality of the circumstances."). Thus, "[t]he relevant inquiry underlying these factors is whether proceeding with a declaratory judgment action

17

will 'provide the much needed source of enlightenment and
clarification ... as to the precise obligations and rights
flowing between [OHI and WMIA],'" id. (quoting Employers' Fire
Ins. Co. v. Beals, 240 A.2d 397, 401 (R.I. 1968)), based on the
1978 Agreement and the Declaration of Rights, "or whether it will
'result in piecemeal litigation, duplication of effort[,] and the
possibility of inconsistent results,'" id. (citing Employers Mut.
Cas. Co. v. PIC Contractors, Inc., 24 F.Supp.2d 212, 215 [D.R.I.
1998]).

     **1.  Are the federal and state court proceedings
parallel?**

       **a.  Time of determination**

    This Court has already determined that, for purposes of
Colorado River abstention, parallel proceedings did not exist at
the time this action was filed.  See Discussion Section I. supra
at 11-13.  Thus, there is no presumption here that the entire
controversy between OHI and WMIA should be heard in state court.
See Standard Fire Ins. Co., 376 F.Supp.2d at 226 ("If there are
parallel state proceedings involving the same issues and parties
pending at the time federal declaratory judgment is filed, there
is a presumption that the entire suit should be heard in state
court.")(quoting Gov't Employees Ins. Co. v. Dizol, 133 F.3d
1220, 1225 (9th Cir. 1998)).

    In determining when parallel proceedings exist for purposes

of applying <u>Wilton/Billhart</u> abstention, Judge Beam of the Eighth

Circuit, writing a plurality opinion, concluded that the issue

"is whether parallel proceedings were pending in state court at

the time [the federal plaintiff] brought its [federal] action."[7]

<u>Fru-Con Constr. Corp.</u>, 574 F.3d at 537 (quoting <u>Scottsdale Ins.</u>

<u>Co.</u>, 426 F.3d at 996)(alterations in original).  However, in

dissenting, Judge Shepherd argued that "it was not essential to

the <u>Scottsdale</u> court's judgment to determine that we must view

the proceedings as they existed when originally filed, as opposed

to some other point in time."  <u>Id.</u> at 542 (Shepherd, J.,

dissenting).  Continuing, Judge Shepherd wrote:

> If, as in the present case, the parties or issues
> involved in the proceedings have changed since the suits
> were originally filed, then taking a snapshot of the
> proceedings as they existed in the past says nothing
> about whether abstention will conserve judicial resources
> and promote comprehensive disposition of the litigation
> in the future.  If, as in <u>Scottsdale</u>, the parties and
> issues have never changed, then there is no difference
> between taking a snapshot of the proceedings as they
> existed in the past and taking a snapshot of the
> proceedings as they currently exist.  The snapshots look
> the same, and the answer to the parallel proceedings

---

[7] Judge Beam reached this conclusion in the course of analyzing
whether parallel proceedings existed in <u>Fru-Con Construction Corp.</u> for
<u>Colorado River</u> abstention.  <u>See</u> <u>Fru-Con Constr. Corp. v. Controlled</u>
<u>Air, Inc.</u>, 574 F.3d 527, 535-37 (8th Cir. 2009)(plurality opinion),
<u>reh'g and reh'g en banc denied</u>.  For guidance as to when actions
become parallel for abstention purposes, Judge Beam looked to two
Eighth Circuit cases which address <u>Wilton/Brillhart</u> abstention,
<u>Scottsdale Insurance Co.</u>, 426 F.3d 994 (8th Cir. 2005), and <u>Royal</u>
<u>Indemnity Co. v. Apex Oil Co.</u>, 511 F.3d 788 (8th Cir. 2008).  <u>See</u> <u>Fru-</u>
<u>Con Constr. Corp. v. Controlled Air, Inc.</u>, 574 F.3d at 537 ("these
cases concern the so-called <u>Wilton/Brillhart</u> abstention doctrine, a
doctrine granting broader discretion to abstain but continuing to
require federal-state parallelism.")(internal citation omitted).

> inquiry is the same.  Therefore, in light of the
> principles underlying Colorado River abstention, it only
> makes sense for the district court to view the state and
> federal proceedings as they *currently* exist to determine
> whether its discretion to abstain is triggered.

Id. at 544-45.

The time of determining the existence of parallel
proceedings for purposes of applying Wilton/Brillhart abstention
is relevant because since OHI commenced this action the Trustee
has filed in the WMIA Trusteeship Action a motion to show cause,
seeking to terminate OHI's sewer service or, in the alternative,
have OHI pay the Continuation Fee.  See Reply Mem. at 2 n.1.  As
Judge Smith noted in Standard Fire Insurance Co., "the First
Circuit has not specifically addressed what constitutes a
'parallel proceeding' in the declaratory judgment context post-
Wilton ...."  376 F.Supp.2d at 226.  It also has not indicated at
what point in time that determination is to be made.  Most of the
cases which this Magistrate Judge has found that address this
issue do so in the context of applying Colorado River abstention,
and they indicate that the determination is to be made based on
the circumstances that existed at the time the federal action was
filed.  See Discussion Section I. supra at 11-13; see also
UnitedHealth Grp., Inc. v. Lexington Ins. Co., No. Civ. 05-1289
DSDSRN, 2006 WL 695523, at *6 (D. Minn. Mar. 17, 2006).  The Fru-
Con Construction Corp., Scottsdale Insurance Co., and
UnitedHealth Grp., Inc., opinions are among the few cases found

20

which consider (or discuss) the question with respect to
Wilton/Brillhart abstention.  Judge Beam and the Scottsdale
Insurance Co. and United Health Group courts concluded, at least
implicitly, that the determination is to be made at the time
plaintiff filed its declaratory judgment action in federal court.

Although the issue is not free from doubt, this Magistrate
Judge concludes that the determination should be made as of the
time the federal action was filed.  Judge Shepherd's dissenting
opinion in Fru-Con Construction Corp., advocating that the
determination of whether there are parallel proceedings should be
made as of the date the federal court confronts the issue, see
Fru-Con Constr. Corp., 574 F.3d 542-45, is not without persuasive
force.  However, he also advocates that the same date should
apply for purposes of determining Colorado River abstention.  See
id. at 544-45 ("[I]n light of the principles underlying Colorado
River abstention, it only makes sense for the district court to
view the state and federal proceedings as they *currently* exist to
determine whether its discretion to abstain is triggered.").
This would appear to be a significant departure from the approach
which most courts have taken in applying Colorado River
abstention, see Discussion Section I. supra at 11-13, and gives
this Court pause with respect to embracing the parallel
proceedings analysis which he advocates.  The First Circuit
appears not to have done so when considering Colorado River

21

abstention, cf. Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 11 n.8
(1st Cir. 2002)("'It is sensible to stay proceedings until **an
earlier-filed state case** has reached a conclusion'....")(quoting
Rogers v. Desiderio, 58 F.3d 299, 302 (7th Cir. 1995))(bold
added); Bettencourt, 904 F.2d at 777 (holding that for purposes
of Younger abstention the proper point of reference in
determining whether federal proceedings would interfere with
*ongoing* state proceedings "is the date plaintiff filed his
federal complaint."). But see Elmendorf Grafica, Inc. v. D.S.
Am. (East), Inc., 48 F.3d 46, 51 (1st Cir. 1995)(finding that
magistrate judge erred in recommending stay under Colorado River
by failing to "give appropriate attention to the fact that, at
the time the issue of a stay was before the district court
(indeed, up until now), the Illinois action consisted of no more
than a pending appeal from the order of the Cook County Circuit
Court dismissing the action for lack of personal jurisdiction"[8]).

---

[8] Read in isolation, the quoted statement could be construed as
meaning that a district court, in applying Colorado River abstention,
should consider the status of the state and federal actions at the
time the court rules upon the motion for a stay.  However, in
Elmendorf Grafica the status of the state action was essentially the
same from the date the federal action was commenced (via removal) to
the date of the First Circuit's opinion, i.e., the action had been
dismissed by the county circuit court and the defendant's appeal of
that dismissal was pending in the state appellate court.  See
Elmendorf Grafica, Inc. v. D.S. America (East), Inc., 48 F.3d 46, 48-
49 (1st Cir. 1995).  The First Circuit also faulted the magistrate
judge for "suggest[ing] a parallelism that did not then exist, given
that the Illinois case had been dismissed on jurisdictional grounds,
leaving only an appeal from the dismissal." Id. at 51.  Viewed again
in isolation, the words "did not then exist," id., could be read as
referring to the time when the magistrate judge was issuing his report

### b.  Finding Re Parallel Proceedings

Accordingly, for the reasons stated above, the Court finds, for purposes of applying the <u>Wilton/Brillhart</u> doctrine, that there are no parallel state and federal court proceedings because OHI was not a party to the WMIA Trusteeship Action in state court when this action was filed.  <u>See</u> JSF ¶ 11.  This finding, however, does not mean that absention under <u>Wilton/Brillhart</u> is precluded.  <u>See</u> <u>Standard Fire Ins. Co.</u>, 376 F.Supp.2d at 230 (continuing with <u>Wilton</u> analysis even after finding federal and state court proceedings were not parallel); <u>see also</u> Wilton, 515 U.S. at 290 ("We do not to attempt at this time to delineate the outer boundaries of [the district court's] discretion in other cases, for example, cases raising issues of

---

and recommendation.  The phrase could also be read as referring to the date the federal action commenced (by removal from the Puerto Rico superior court).  Supportive of the latter interpretation is the fact that at this point in its opinion, the First Circuit was focusing on specific language in the magistrate judge's report and recommendation (namely that "the two parties would be litigating very similar issues in two separate forums," <u>id.</u> at 51), and that language preceded the magistrate judge's finding that "[t]he Illinois court was the **first** to assume jurisdiction," <u>id.</u> at 51 (bold added).  Thus, it appears that the First Circuit was critical of the magistrate judge's implicit finding that at the time the federal action commenced there was a parallel action pending in the Illinois state court when, in fact, all that remained of that action was an appellate appeal of a jurisdictional issue.

<u>Elmendorf Grafica</u>, therefore, does not mean that the magistrate judge used the wrong point in time when he considered the federal and state actions.  Rather, the magistrate judge erred in failing to consider that the state action had been dismissed at the trial court level at the time the federal action was commenced.  Therefore, <u>Elmendorf Grafica</u> is not inconsistent with this Magistrate Judge's conclusion that the determination of the existence of parallel proceedings for abstention purposes is to be made as of the date the federal action is commenced.

federal law or cases in which there are no parallel state
proceedings."); Scottsdale Ins. Co., 426 F.3d at 998 (noting that
Fourth, Sixth, and Tenth Circuits have "struck a balance between
[the broad discretion granted in Wilton and the narrow
"exceptional circumstances" prescribed by Colorado River],
allowing the federal district court some, but not complete,
discretion in determining whether to dismiss or stay declaratory
judgment actions when there are no parallel state court
proceedings"); cf. Fru-Con Constr. Corp., 574 F.3d at 542 n.11
(Shepherd, J., dissenting)("If the proceedings are not parallel,
the district court still has some discretion to abstain; however,
it does not have the broad discretion outlined in Wilton.").

### 2.  Other Factors

#### a.  Source of Law

OHI's Complaint makes no federal claims and raises no
arguments under any federal statute.  Its prayer for declaratory
relief is controlled entirely by state law.  However, this case
arises out of a private contract dispute, and judges of this
District routinely handle contract disputes involving application
of state law.  Accordingly, the fact that state rather than
federal law controls the issues in this case is not
determinative.  See Standard Fire Ins. Co., 376 F.Supp.2d at 231
("While state rather than federal law controls the issues in this
case, that factor alone does not sway the balance in favor of

abstention.")(quoting <u>BFI Waste Sys. of N. Am., Inc. v. Travelers
Cas. & Sur. Co.</u>, No. 94-507-JD, 1999 WL 813879, at *6 (D.N.H.
Oct. 6, 1999)); <u>see also id.</u> ("'[T]he state's interest, while
important, is diminished' in cases such as this one, where 'the
state-law issues are not novel, unsettled, difficult, complex, or
otherwise problematic.'")(quoting <u>First Fin. Ins. Co. v.
Crossroads Lounge, Inc.</u>, 140 F.Supp.2d 686, 695 (S.D. W.Va.
2001))(alteration in original).

### b.  Scope of State Court Proceedings

Even if the Court were to make the determination of the
existence of parallel proceedings at the present time and find
that there is a concurrent state proceeding based on WMIA's
filing of the show cause motion, the Court agrees with OHI that
requiring it to litigate contract issues in summary proceedings
in the WMIA Trusteeship Action would be contrary to Rhode Island
law.  <u>See</u> Plaintiff's Mem. at 13 (citing <u>Marandola v. Marandola
Mech., Inc.</u>, No. 03-5949, 2005 WL 1331198 (R.I. Super. 2005)
(Silverstein, J.)).

In <u>Marandola</u>, Justice Silverstein found that summary process
is inappropriate if the adverse claimant asserts a real claim of
right:

> Summary process may be appropriate where the res is in
> possession of the court or where the adverse party's
> claim is a pretense or merely colorable.  <u>Wood v.
> National Corporation</u>, 265 F. 791, 792 (D. Pa. 1919).
> However, if the adverse claimant asserts a real claim of
> right, "the court will not deal with such person in a

summary way, but will require the receiver to assert his claims of right by plenary process." Id. at 793.

Marandola, 2005 WL 1331198 at *2.  The Court in Marandola went on to observe that where real defenses are presented, a contract action "is precisely the type of dispute that 'regular, normal court proceedings are designed to take care of.'" Id. at 3.

> It is a bedrock principle of receiverships that a receiver stands in no better shoes than the debtor company and has no higher rights than that which the company has. White v. Ewing, 159 U.S. 36, 39 (1895); Vitterito v. Sportsman's Lodge & Restaurant, Inc., 102 R.I. 72, 80, 228 A.2d 119, 124-25 (1967)(generally, a receiver succeeds only to the debtor's rights and takes the debtor's property subject to claims, liens and equities which would affect the debtor if he himself were asserting his interest in the property); 2 Clark on Receivers, § 362. **If Marandola were not in receivership, clearly, the proper procedure by which to collect money owing to it under the construction contracts would be through an ordinary, plenary, civil action.**  It is true that summary process may be appropriate in some circumstances, such as allowing or disallowing particularly small and inconsequential claims against the debtor. 2 Clark on Receivers § 547(b). However, an "everyday, garden variety controversy" such as the matter at hand, concerning seemingly real defenses to a demand for payment under a contract is precisely the type of dispute that "regular, normal court proceedings are designed to take care of," including, if appropriate, summary judgment. [Fire Ins. Co. v.] Scanlon, 362 U.S. [404,] 410 (summary process inappropriate to adjudicate, as between the Department of Revenue and a surety of the taxpayer, who owns the right to collect the taxpayer's account receivable).

Marandola v. Marandola Mech., Inc., 2005 WL 1331198, at *3 (bold added)(footnote omitted).

As in Marandola, if WMIA were not under the trusteeship, the proper procedure to collect the sewer use fee which OHI allegedly

owes would be through an ordinary, plenary, civil action.  Thus,
I find that the summary proceedings in the trusteeship action are
not equivalent to the proceedings available to OHI in this
Court.[9]  See id. ("[O]rdering [non-party] to show cause why it
should not have to pay Marandola would impermissibly excuse
Marandola's fundamental responsibility of proving its claim.");
cf. Moses H. Cone Mem'l Hosp., 460 U.S. at 28 ("If there is any
substantial doubt [that the parallel state court litigation will
be an adequate vehicle for the complete and prompt resolution of
the issues between the parties], it would be a serious abuse of
discretion to grant the stay or dismissal ....").

### c.  State Court's Familiarity

WMIA argues that the Superior Court's familiarity with the
issues involved weigh in favor of abstention, see Defendant's
Mem. at 14, but OHI validly argues that the issue of its
obligation to pay a continued use fee has not been considered by

---

[9] WMIA states that "[i]f the case were to proceed in Superior
Court, WMIA would agree that the proceedings should include discovery
and an evidentiary hearing.  WMIA would also agree that OHI could
assert affirmative defenses and claims in connection with the Sewer
Line dispute."  Reply Mem. at 9.  WMIA's willingness to extend these
procedural protections to OHI is commendable.  However, the fact that
without such extension OHI's entitlement to them is at least unclear
only serves to highlight the difference between the WMIA Trusteeship
Action and an "ordinary, plenary, civil action," Marandola v.
Marandola Mech., Inc., No. 03-5949, 2005 WL 1331198, at *3 (R.I.
Super. 2005); see also Brillhart, 316 U.S. at 495 (instructing that in
deciding whether the controversy can be better settled in the pending
state court proceeding, district court may "inquir[e] into the scope
of the pending state court proceeding and the nature of the defense
open there").

that court, <u>see</u> Plaintiff's Mem. at 12.  WMIA further argues that
Justice O. Rogeriee Thompson of the Superior Court has
continuously maintained administrative and supervisory control
over the WMIA trusteeship.  <u>See</u> Defendant's Mem. at 5.  However,
Justice Thompson has been nominated to fill a vacancy on the
United States Court of Appeals for the First Circuit, and it
appears that she may be leaving the Superior Court in the near
future.  Thus, Justice Thompson's familiarity with the WMIA
Trusteeship Action does not factor into this Court's
determination of the instant Motion.

   **C.  Conclusion Re <u>Wilton/Brillhart</u> Abstention**

   After considering the <u>Wilton/Brillhart</u> factors, especially
the absence of parallel proceedings, <u>see</u> <u>Standard Fire Ins. Co.</u>,
376 F.Supp.2d at 229 (finding that "lack of parallelism weighs
strongly against ... dismissal of the declaratory judgment
action"), I find that the question in controversy between the
parties to this action, which is not foreclosed under the
applicable substantive law, cannot be better settled in the WMIA
Trusteeship Action in the Superior Court, <u>see</u> <u>Wilton</u>, 515 U.S. at
282 (stating that this is "[t]he question for a district court
presented with a suit under the Declaratory Judgment Act")
(quoting <u>Brillhart</u>, 316 U.S. at 495).  I further find that this
declaratory judgment action will not "result in piecemeal
litigation, duplication of effort[,] and the possibility of

28

inconsistent results." Standard Fire Ins. Co., 376 F.Supp.2d at
225. Accordingly, WMIA's request that the Court exercise its
discretion with respect to declaratory judgment actions and
refrain from hearing this matter should be denied. I so
recommend.

## III. Burford Abstention

WMIA argues that abstention additionally is appropriate in
this case under the principles originally set forth in Burford v.
Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098 (1943).

### A. Law

Burford allows a federal court to dismiss a case only if it
presents difficult questions of state law bearing on policy
problems of substantial public import whose importance transcends
the result in the case at bar, or if its adjudication in a
federal forum would be disruptive of state efforts to establish a
coherent policy with respect to a matter of substantial public
concern. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 726-27,
116 S.Ct. 1712 (1996)(citing New Orleans Pub. Serv., Inc. v.
Council of City of New Orleans ("NOPSI"), 491 U.S. 350, 361, 109
S.Ct. 2506 (1989)). In Quackenbush, the Supreme Court noted that
in NOPSI it had "again illustrated the narrow range of
circumstances in which Burford can justify the dismissal of a
federal action." Id. at 726.

> Ultimately, what is at stake is a federal court's
> decision, based on a careful consideration of the federal

29

> interests in retaining jurisdiction over the dispute and
> the competing concern for the "independence of state
> action," <u>Burford</u>, 319 U.S., at 334, 63 S.Ct., at 1107,
> that the State's interests are paramount and that a
> dispute would best be adjudicated in a state forum. <u>See</u>
> <u>NOPSI</u>, <u>supra</u>, 491 U.S., at 363, 109 S.Ct., at 2515
> (question under <u>Burford</u> is whether adjudication in
> federal court would "unduly intrude into the processes of
> state government or undermine the State's ability to
> maintain desired uniformity"). This equitable decision
> balances the strong federal interest in having certain
> classes of cases, and certain federal rights, adjudicated
> in federal court, against the State's interests in
> maintaining "uniformity in the treatment of an
> 'essentially local problem,'" 491 U.S., at 362, 109
> S.Ct., at 2515 (quoting <u>Alabama Pub. Serv. Comm'n [v.</u>
> <u>Southern R. Co.</u>, 341], 347, 71 S.Ct., at 767), and
> retaining local control over "difficult questions of
> state law bearing on policy problems of substantial
> public import," <u>Colorado River</u>, 424 U.S., at 814, 96
> S.Ct., at 1244. **This balance only rarely favors**
> **abstention**, and the power to dismiss recognized in
> <u>Burford</u> represents an "'extraordinary and narrow
> exception to the duty of the District Court to adjudicate
> a controversy properly before it.'" <u>Colorado River</u>,
> <u>supra</u>, at 813, 96 S.Ct., at 1244 (quoting <u>County of</u>
> <u>Allegheny</u>, 360 U.S., at 188, 79 S.Ct., at 1063).

<u>Quackenbush</u>, 517 U.S. at 728 (bold added).

### B.  Applicability of <u>Burford</u>

WMIA argues that federal courts have frequently invoked the

<u>Burford</u> doctrine to avoid interference with state receivership

and liquidation proceedings. <u>See</u> Defendant's Mem. at 15; <u>id.</u>

(noting "traditional federal deference provided to state

receivership proceedings")(quoting <u>Grimes v. Crown Life Ins. Co.</u>,

857 F.2d 699, 703 (10th Cir. 1988)). Citing several cases

involving state receiverships and liquidation proceedings, <u>see</u>

<u>e.g.</u>, <u>Prop. & Cas. Ins. Ltd. v. Cent. Nat'l Ins. Co.</u>, 936 F.2d

319, 321 (7th Cir. 1991)("<u>Burford</u> has become the doctrine of choice in analyzing whether to abstain in favor of state insurance liquidation and rehabilitation proceedings."), WMIA asserts that "[c]onsistent with these decisions, <u>Burford</u> abstention clearly is appropriate in this matter," Defendant's Mem at 19.

The Court is not so persuaded.  The WMIA Trusteeship Action does not involve the liquidation of an insolvent entity.  Thus, the state interest in an orderly liquidation which existed in the cases cited by WMIA is not present here.

WMIA additionally argues that the Superior Court has exclusive jurisdiction over the assets of the trusteeship and that "it is the sole forum to determine the rights and obligations of the parties concerning and relating to the assets of the trusteeship estate."  Reply Mem. at 6.  Relatedly, WMIA asserts that "the relief requested by OHI is with respect to an asset of the state court trusteeship."  Defendant's Mem. at 19 n. 3.  However, whether the continued use fee, which is the subject of this declaratory judgment action, is an asset of the trusteeship depends on whether OHI is legally obligated to pay that fee.  If OHI is not so obligated, then there is no asset. The Court declines to recommend abstention based on a rationale that depends upon the movant's view of the disputed issue being correct.

31

The instant action does not involve "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case ... at bar." Quackenbush, 517 U.S. at 726-27.  Adjudication of the action in this forum would also not "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."[10]  Id. at 727.  The Court has also already determined that the summary proceedings available in the WMIA Trusteeship Action do not provide OHI with adequate state court review.  See Discussion Section II.B.2.b. supra at 25.

## C.  Conclusion Re Burford Abstention

Because the necessary conditions for the exercise of Burford

_____

[10] "Burford is concerned with protecting complex state administrative processes from undue federal interference ...." NOPSI, 491 U.S. at 362.  Given the nature of the WMIA Trusteeship Action and its origin, see Facts supra at 5 n.3, this Magistrate Judge doubts that it can be fairly described as a "complex state administrative process[]."  Even assuming that it qualifies as such, Burford "does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy."  Id.; see also Sheerbonnet, Ltd. v. Am. Express Bank Ltd., 17 F.3d 46, 49 (2nd Cir. 1994)("The mere existence of concurrent state and federal actions concerning similar matters is not enough to warrant abstention.").  As the court in Koncelik v. Town of East Hampton, 781 F.Supp. 152 (E.D.N.Y. 1991) noted:

> [e]ach court is free to proceed in its own way and its own time, without reference to the proceedings in the other court.  Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of res judicata.

Id. at 155-56 (quoting Giulini v. Blessing, 654 F.2d 189, 193 (2nd Cir. 1981)(quoting Kline v. Burke Constr. Co., 260 U.S. 226, 230, 43 S.Ct. 79 (1922)))(alteration in original).

abstention are not present, WMIA's request that the Court should abstain based on <u>Burford</u> should be denied.  I so recommend.  <u>Cf.</u> <u>Vaquería Tres Monjitas, Inc. v. Irizarry</u>, 587 F.3d 464, 474 (1st Cir. 2009)("<u>Burford</u> abstention must only apply in 'unusual circumstances,' when federal review risks having the district court become the 'regulatory decision-making center.'")(quoting <u>Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n</u>, 853 F.2d 1007, 1012-13 (1st Cir. 1988)).

## IV.  <u>Younger</u> Abstention

Lastly, WMIA argues that abstention is also appropriate under the doctrine pronounced in <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746 (1971).

### A.  Law

The Supreme Court held in <u>Younger</u> that abstention was required where a plaintiff who was defending criminal charges in state court sought to have the federal court enjoin the ongoing state criminal proceedings.  <u>Rio Grande Cmty. Health Ctr. Inc. v, Rullan</u>, 397 F.3d 56, 68 (1st Cir. 2005).  "<u>Younger</u> is grounded in notions of comity: the idea that the state courts should not, in certain circumstances, be interfered with."  <u>Id.</u> at 68-69; <u>see also</u> <u>Rossi v. Gemma</u>, 489 F.3d 26, 34 (1st Cir. 2007)("The <u>Younger</u> doctrine is based on principles of comity, and unless there are extraordinary circumstances, it instructs federal courts not to "'interfere with ongoing state-court litigation, or, in some

cases, with state administrative proceedings.'").

> Younger has been extended to some quasi-criminal (or at
> least "coercive") state civil proceedings-and even
> administrative proceedings-brought by the state as
> enforcement actions against an individual. Maymo-
> Melendez v. Alvarez-Ramirez, 364 F.3d 27, 31-32, 34 (1st
> Cir. 2004) (applying Younger principles to state
> administrative disciplinary proceeding of horse trainer);
> see, e.g., Middlesex County Ethics Comm. v. Garden State
> Bar Ass'n, 457 U.S. 423, 432, 434-35, 102 S.Ct. 2515 ...
> (1982) (Younger abstention appropriate where plaintiff
> sought to enjoin ongoing state administrative attorney
> disciplinary proceedings); Moore v. Sims, 442 U.S. 415,
> 423, 99 S.Ct. 2371 ... (1979) (Younger abstention
> appropriate in context of state child removal proceedings
> due to allegations of child abuse); Trainor v. Hernandez,
> 431 U.S. 434, 444, 97 S.Ct. 1911 ... (1977) (Younger
> applies to state proceeding to recover fraudulently
> obtained welfare payments); Huffman [v. Pursue, Ltd.],
> 420 U.S. [592,] 603-05, 95 S.Ct. 1200 (Younger abstention
> appropriate where plaintiff challenged ongoing state
> civil nuisance proceedings); Esso Standard Oil Co., 389
> F.3d at 217-18 (using Younger to require abstention in
> case where environmental board brought state
> administrative proceedings against gasoline station owner
> seeking to fine it).

Rio Grande Cmty. Health Ctr., 397 F.3d at 69.

The First Circuit has articulated the following analytical framework for Younger abstention. "Abstention is appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge." Rossi v. Gemma, 489 F.3d at 34-35. Interference is a threshold issue, id. at 35, and it is "usually expressed as a proceeding that either enjoins the state proceeding or has the

practical effect of doing so," id.

**B. Applicability of <u>Younger</u>**

OHI argues initially that because it is not a party to the in rem trusteeship proceedings in the Superior Court, the <u>Younger</u> abstention doctrine has no application.  <u>See</u> Plaintiff's Mem. at 16.  OHI notes that WMIA has not cited any instances in which the <u>Younger</u> abstention doctrine has been extended to cover a situation where, as here, the federal court plaintiff is not a party to any state court proceedings.  <u>See</u> <u>id.</u>  Given the origin of the doctrine and the situations to which it has been extended, the Court finds this distinction to be significant.

Turning directly to the analytical framework prescribed by the First Circuit for <u>Younger</u> abstention, the Court doubts that the WMIA Trusteeship Action, which has no foreseeable termination point and appears to be permanent in nature, is the type of "ongoing state judicial proceeding," <u>Rossi v. Gemma</u>, 479 F.3d at 34, contemplated for <u>Younger</u> abstention.  The Court is unpersuaded that allowing the instant action to proceed will interfere with the Trusteeship.  As previously stated, the Court rejects WMIA's argument that the continuing use fee at issue here is an asset of the Trusteeship.

The Court is also unpersuaded that allowing the instant action to proceed will interfere with an important state interest.  The WMIA Trusteeship Action does not involve the

35

liquidation of an insolvent entity.  Therefore, also as previously noted, the interest which the state has in such matters in not present here.  While the state may have some interest in the operation of a private sewer line which serves five properties, the Court is not convinced that it rises to the level of "an important state interest."  Rossi, 489 F.3d at 34-35.  As OHI makes no federal constitutional challenge, the third Younger factor does not apply.

### C.   Conclusion Re Younger Abstention

The Court is unpersuaded that the circumstances presented by the instant action are sufficiently similar to other actions where Younger abstention has been found to be proper.  The WMIA Trusteeship Action is not the type of ongoing state judicial proceeding Younger abstention contemplates, and the Court is unpersuaded that there is an "important state interest" in this matter.  Accordingly, WMIA's request for abstention based on Younger should be denied.  I so recommend.

## V.  Summary

The Court finds that abstention is not warranted under the doctrines commonly known as Colorado River, Wilton/Brillhart, Burford, and Younger.  The Court's finding with respect to abstention under both the Colorado River and Wilton/Brillhart doctrines is admittedly dependent to a significant degree on its subsidiary finding that the proper point in time to determine

36

whether there are parallel proceedings in the state and federal courts is the date of the commencement of the federal action. This approach to determining parallelism has been referred to as "the 'originally filed' approach," Fru-Con Constr. Corp., 574 F.3d at 543 (Shepherd, J., dissenting), and it has its critics, see id. at 540-46.  Nevertheless, even if the Court were to make the determination of parallelism as of the present time, it would still conclude that the two actions are not sufficiently parallel because ordering OHI, a non-party to the trusteeship action, to show cause why it should not have to pay the continued use fee would impermissibly excuse WMIA from its burden of proving that OHI is contractually obligated to pay this fee.

## Conclusion

For the reasons stated above, I recommend that Defendant's Motion to Dismiss or Stay be denied.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
January 11, 2010